**United States District Court**

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONY COMPUTER ENTERTAINMENT AMERICA, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>GREAT AMERICAN INSURANCE CO., *et al.*,<br><br>            Defendants.<br>_____/ | No. C-04-0492 PJH (EMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS BY ANDREW VU; AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL FURTHER DEPOSITION OF JENNIFER LIU**<br>**(Docket Nos. 145-46)** |

   Defendant American Home Assurance Co. ("American Home") has filed two motions to compel contesting the assertion of privilege by Plaintiff Sony Computer Entertainment America, Inc. ("SCEA") at the depositions of Jennifer Liu and Andrew Vu. Part of the motion related to Ms. Liu has been withdrawn. *See* Joint letter of 7/25/05, at 2. The Court hereby addresses the remaining issues raised in each motion. Each motion is GRANTED in part and DENIED in part.

   **I.   FACTUAL & PROCEDURAL BACKGROUND**

   SCEA has filed suit against various insurance companies, including American Home. In essence, SCEA contends that American Home and the other insurance companies wrongfully and in bad faith denied insurance coverage to SCEA for defense and indemnity in connection with consumer lawsuits against SCEA claiming property damage, false advertising, and other injury in

connection with PlayStation and PlayStation 2. *See* FAC ¶ 1. The consumer lawsuits at issue are known as the *Nickerson/Muccioli* lawsuits and the *Kim/Kaen* lawsuits.

A. <u>Deposition of Ms. Liu</u>

On December 14, 2005, American Home noticed the deposition of Ms. Liu, the director of legal and business affairs at SCEA. *See* Davis Decl., Ex. 1; *see also id.*, Ex. 5 (Liu Dep. at 68). SCEA produced Mr. Liu for deposition on January 11, 2005. *See* Mot. at 8.

On December 15, 2004, American Home also noticed a 30(b)(6) deposition regarding the underlying *Nickerson* and *Muccioli* lawsuits, *see* Davis Decl., Ex. 2, and another 30(b)(6) deposition regarding the underlying *Kim* and *Kaen* lawsuits. *See id.*, Ex. 3. SCEA elected to designate Ms. Liu for both 30(b)(6) depositions, which took place on January 12 and 14, 2005. *See* Mot. at 8.

During the depositions of Ms. Liu, both in her individual and 30(b)(6) capacities, privilege objections were made by SCEA's counsel.

B. <u>Deposition of Mr. Vu</u>

On December 14, 2004, American Home noticed the deposition of Mr. Vu, a lawyer at SCEA. *See* Davis Decl., Ex. 1; Mot. at 3. SCEA produced Mr. Vu for deposition on January 21, 2005. *See* Mot. at 3.

During Mr. Vu's deposition, privilege objections were asserted by SCEA's counsel.

## II. **DISCUSSION**

At the hearing on the motions to compel, the parties agreed that the disputes involving Ms. Liu and Mr. Vu could be boiled down to three issues, namely, (1) whether SCEA's communications with and in the presence of third parties are privileged; (2) whether SCEA waived its privilege with respect to communications with outside counsel (*i.e.*, the Crosby Heafey and Gray Cary law firms) by disclosing to third parties a document known as "Exhibit A-49"; and (3) whether Ms. Liu and Mr. Vu played business roles or legal roles, *e.g.*, with respect to the supervision of SCEA's counsel in the consumer lawsuits and events related to the tender of SCEA's claim to American Home.

A. <u>SCEA's Communications with and in the Presence of Third Parties</u>

At the hearing on the motions, the parties clarified that the only third party at issue is Mr. O'Neil, the insurance broker for SCEA, and not Mr. Webber, the representative of another insurance

company, Great American. (SCEA agreed that there is no privilege as to communications to which Mr. Webber was a party.) American Home argues that attorney-client communications involving or made in the presence of Mr. O'Neil are not privileged. SCEA, in turn, argues that such communications are confidential and privileged because Mr. O'Neil was "present indisputably to further SCEA's interest in Ms. Liu's consultations." Joint letter of 7/25/05, at 9 (citing Cal. Civ. Code § 952 (allowing for disclosure of information to third parties "present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted")).

Generally, "[t]he burden of establishing that a particular matter is privileged is on the party asserting the privilege." *San Diego Professional Ass'n v. Superior Court*, 58 Cal.2d 194, 199 (1962). There is an exception: "Whenever a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in the course of the lawyer-client . . . relationship, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential." Cal. Evid. Code § 917. That exception to the normal allocation of burden is lost, however, when the communication is disclosed to a third party under California Evidence Code § 912(a). *See id.* § 912(a) (noting that party has waived privilege if it has "disclosed a significant part of the communication or has consented to such disclosure made by anyone"); *see also Moeller v. Superior Court*, 16 Cal. 4th 1124, 1136 (1997) ("[T]he holder of an evidentiary privilege waives it by voluntarily disclosing the privileged communication to a third party . . . ."). Where a third party is present, no presumption of confidentiality obtains, and the usual allocation of burden of proof, resting with the proponent of the privilege, applies in determining whether confidentiality was preserved under § 952.[1] *See Raytheon Co. v. Superior Court*, 208 Cal. App. 3d 683, 688 (1989)

---

[1] It is appropriate that the proponent of the privilege has the burden of proving that a third party was present to further the interest of the proponent because, in this situation, where the privilege turns on the nature of the relationship and content of communications with the third party in question, the proponent is in the better posture to come forward with specific evidence explaining why confidentiality was not broken. *Cf. People v. Medina*, 51 Cal. 3d 870, 885 (1990) ("In determining the propriety of a particular proof allocation, a critical factor is the extent to which either party has access to the relevant

("[T]he presence of third parties does not destroy confidentiality *if* the disclosure was reasonably necessary to accomplish the client's purpose in consulting counsel.") (emphasis added); *see also D.I. Chadbourne, Inc. v. Superior Court*, 60 Cal. 2d 723, 729 (1964) ("The party claiming privilege carries the burden of showing that the evidence which it seeks to suppress is within the terms of the statute."); *cf.* 2 Paul R. Rice, Attorney-Client Privilege in the United States § 9:20, at 53-54 (2d ed. 1999) ("[O]nce it is established that third parties were either present at an attorney-client meeting or permitted to examine confidential attorney-client communications, the proponent must prove that those third parties were acting as agents of either the attorney or client in order to avoid a finding that confidentiality was missing.").

Here, SCEA provided no evidentiary support for its claim that Mr. O'Neil was present to further the interest of SCEA in the consultation or someone to whom disclosure was reasonably necessary to accomplish the purpose for which the lawyer was consulted. Although there was a great deal of discussion at the hearing as to whether Mr. O'Neil was present as a claims advocate to assist SCEA and its attorney or as a potential adversary to SCEA, no admissible evidence was presented to the Court as part of the parties' submissions in support of or in opposition to the motion to compel.[2] SCEA did not, for example, provide a declaration from Mr. O'Neil or even from Ms. Liu regarding Mr. O'Neil's role with respect to SCEA's insurance claim. Thus, SCEA failed to carry its burden of proving the privilege.

B.   Waiver Through Disclosure of Exhibit A-49

Exhibit A-49 is an eight-page fax, dated June 13, 2002, sent from Near North Insurance Brokerage, Inc. ("Near North") to AIG Claim Services ("AIG"). AIG apparently then turned over the fax to American Home. Exhibit A-49 states in part: "Attached is a lawsuit in reference to the above captioned claim [*i.e.*, *Kaen* suit against SCEA]." Davis Decl., Ex. 3. One of the attachments

---

[2] After the hearing on the motions to compel concluded, SCEA filed a letter brief, asking for leave to file supplemental evidence to support its claim that Mr. O'Neil was present to assist SCEA and its attorney. *See* Docket No. 213. The Court denies that request. SCEA's contention that it was not aware of the need to supply such evidence is not well taken: SCEA was the one to put forward the argument based on § 952.

4

to the Near North fax is a fax from SCEA to several individuals at Sony Corporation of American and Near North, dated May 30, 2002.  The fax states: "Per Andrew Vu's instructions, please tender the [*Kaen* class action], putting our insurers on notice of this potential claim.  [¶] Enclosed are copies of the following items: . . . May 28, 2002, fax from Luanne Sacks at Crosby, Heafey, Roach & May to Andrew A. Vu."  *Id.*  The communication from Ms. Sacks to Mr. Vu is a fax of an e-mail from Ms. Sacks to Mr. Vu, which is labeled "URGENT – CONFIDENTIAL – DVD class claim – Edward Kaen."  At the hearing on the motions, SCEA did not contest that any privilege over Exhibit A-49 had been waived through the disclosure of the Sacks e-mail to Near North.  Thus, the only question for the Court is the scope of the waiver.  SCEA argues that "the waiver must be strictly limited to the actual contents of the email itself."  Opp'n at 16 n.17.  In contrast, American Home argues that there has been a waiver not only with respect to the e-mail but also *any* communication with outside counsel (at least the Gray Cary and Crosby Heafey firms).

      Under California law, "the scope of [a] waiver should be determined primarily by reference to the purpose of the privilege. . . . [¶] . . . The scope of [the] waiver is narrowly defined and the information required to be disclosed must fit strictly within the confines of the waiver."  *Transamerica Title Ins. Co. v. Superior Court*, 188 Cal. App. 3d 1047, 1047 (1987).  Taking this into account, the Court concludes that the proper scope of the waiver includes not only the actual contents of the Sacks e-mail but also any follow-up discussions between Crosby Heafy and SCEA regarding the e-mail.  The Court rejects American Home's argument that the waiver should extend to matters regarding coverage or timeliness of SCEA's tender to American Home because these subjects were not discussed in the e-mail between Ms. Sacks and Mr. Vu.  The Sacks e-mail concerned only the merits of a particular consumer's claim against SCEA.  Moreover, so far as the Court can discern, SCEA has not obtained any strategic advantage from the disclosure of the e-mail.  In other words, there does not appear to be any "selective disclosure" by SCEA -- disclosing documents of benefit but hiding documents of harm -- such that fairness might require a broader waiver.

C.    <u>Ms. Liu and Mr. Vu's Roles</u>

According to American Home, SCEA improperly asserted privilege with respect to various questions asked of Ms. Liu and Mr. Vu during their depositions because Ms. Liu and Mr. Vu performed only business roles and not legal roles.  The Court does not agree.  Just because, *e.g.*, Mr. Vu may have asked that the *Kaen* claim be tendered to American Home does not mean that he did not play a legal role and should be considered only a claims representative.  *See, e.g.*, Sheen Decl., Ex. D (Vu Dep. at 18) ("When I started in June of 2000 [at SCEA], I began to monitor and manage *Nickerson* and *Muccioli* matter[s].").

That being said, the Court finds that American Home may properly ask SCEA's 30(b)(6) witness what SCEA's understanding was regarding, *e.g.*, its legal obligations under the American Home policy, even if the 30(b)(6) deponent is a lawyer and even if the answer to such questions might indirectly reveal the advice of counsel received by SCEA.  American Home, however, may not ask Ms. Liu or Mr. Vu about their actual communications or *individual* understandings since that would contain mental impressions protected by the work product privilege.  As to any claim of issue waiver, American Home has no need to ask Ms. Liu or Mr. Vu what his or her individual understanding was because it may ask SCEA's 30(b)(6) witness about SCEA's understanding directly; fairness requires nothing more.

### III.    CONCLUSION

For the foregoing reasons, the Court hereby grants in part and denies in part both American Home's motion to compel regarding Ms. Liu and its motion to compel regarding Mr. Vu.

This order disposes of Docket Nos. 145 and 146.

IT IS SO ORDERED.

Dated:  August 9, 2005

EDWARD M. CHEN
United States Magistrate Judge