**United States District Court**
For the Northern District of California

1

2

**NOT FOR CITATION**

3

UNITED STATES DISTRICT COURT

4

NORTHERN DISTRICT OF CALIFORNIA

5

6

7   SONY COMPUTER ENTERTAINMENT
    AMERICA INC.

8
            Plaintiff,                       No. C 04-0492 PJH
9
        v.                                   **ORDER GRANTING DEFENDANT'S**
10                                           **MOTION FOR SUMMARY JUDGMENT;**
                                             **DENYING PLAINTIFF'S MOTION FOR**
11                                           **SUMMARY JUDGMENT**
    AMERICAN HOME ASSURANCE
12  COMPANY; and AMERICAN
    INTERNATIONAL SPECIALTY LINES
13  INSURANCE COMPANY,

14          Defendants.
    _____/
15

16          The parties' cross-motions for summary judgment came on for hearing on November

17  16, 2005 before this court.  Plaintiff Sony Computer Entertainment America Inc. ("Sony")

18  appeared through its counsel, Martin H. Myers, and defendant American International

19  Specialty Lines Insurance Company ("AISLIC") appeared through its counsel, Thomas H.

20  Sloan.  Having read all the papers submitted and carefully considered the relevant legal

21  authority, the court hereby GRANTS defendant AISLIC's motion for summary judgment and

22  DENIES plaintiff Sony's motion for partial summary judgment, for the reasons stated at the

23  hearing, and as follows.

24                              **BACKGROUND**

25      A.    Factual Background

26          In 2001, AISLIC sold Sony a "Multimedia Professional Liability Policy" covering liability

27  for certain specified "wrongful acts," provided such acts arose and were tendered during the

28  period covering July 1, 2001 through July 1, 2002.  See Declaration of Norman Rafsol in

**United States District Court**

For the Northern District of California

1    Support of AISLIC's Motion for Summary Judgment ("Rafsol Decl."), Ex. C.

2        In July 2002, Sony was sued in state court in two class actions (the <u>Kim/Kaen</u> actions),

3    in which the class plaintiffs alleged that Sony's Playstation 2s ("PS2"s) suffered from a design

4    defect that rendered them unable to play DVDs and certain game discs.  <u>See</u> Declaration of

5    Jennifer Liu in Support of Sony's Motion for Summary Judgment ("Liu Decl."), Exs. A-B.

6    Specifically, the <u>Kim/Kaen</u> complaints alleged causes of action for breach of warranty,

7    negligent misrepresentation, unfair business practices (Cal. Bus. & Professions Code §

8    17200), and false advertising (Cal. Bus. & Professions Code § 17500), among other claims.

9    <u>Id</u>.

10       Sony tendered the <u>Kim/Kaen</u> claims to AISLIC for coverage pursuant to the AISLIC

11   policy.  On June 17, 2003, AISLIC denied coverage.

12       B.    Insurance Policy

13            1.    Provisions

14   The AISLIC policy has the following relevant provisions:

15   <u>Wrongful Act</u>: AISLIC agrees to pay "for each wrongful act or series of continuous,

16   related or repeated wrongful act(s)...".  <u>See</u> Rafsol Decl., Ex. C at 00102 (Policy,

17   Declarations).  "'Wrongful act' means the following committed by the insured in the business of

18   the insured:  ... (g) defective advice, incitement, or negligent publication, including bodily injury

19   or property damage or death arising out of the foregoing."  <u>See</u> Rafsol Decl., Ex. C at 00122-

20   23 (Policy, section VII (Definitions)).

21            2.    Exclusions

22   Certain exclusions have also been singled out in the policy.

23       First, the AISLIC policy excludes coverage for any claim "arising out of ... unfair or

24   deceptive business practices including but not limited to, violations of any local, state or

25   federal consumer protection laws...".  Rafsol Decl., Ex. C at 00105-109 (Policy, section II

26   (Exclusion C)).

27       Second, the policy also excludes coverage for any claim "alleging or arising out of a

28

                                        2

United States District Court

For the Northern District of California

breach of any express warranties, representations or guarantees." Id. (Policy, section II (Exclusion J)).

Finally, the policy excludes coverage for any claim "arising out of false advertising or misrepresentation in advertising." Id. (Policy, section II (Exclusion P)). Significantly, however, this exclusion has an important "exception", which provides: "However, we will defend suits alleging any of the foregoing conduct until there is a judgment, final adjudication, adverse admission or finding of fact against you as to such conduct at which time you shall reimburse us for claim expense...". Id.

C.      Procedural History

On February 5, 2004, Sony filed the instant action against AISLIC (along with several other insurers), alleging that AISLIC had improperly refused to tender a defense to Sony in the Kim/Kaen actions. Specifically, Sony asserts five causes of action against AISLIC: (1) breach of contract for failure to defend Sony; (2) breach of contract for failure to indemnify Sony; (3) breach of the implied covenant of good faith and fair dealing; (4) declaratory relief as to AISLIC's duty to defend Sony; and (5) declaratory relief as to AISLIC's duty to indemnify Sony.

Both parties now move for summary judgment. Sony seeks summary judgment on the duty to defend claims only (first and fourth causes of action), and AISLIC seeks summary judgment as to all five claims.[1]

**DISCUSSION**

A.      Legal Standard

1.      Summary Judgment

Summary judgment is appropriate when the evidence shows there is no genuine issue

---

[1]      Both parties have also concurrently filed: (1) objections to evidence; (2) a request for judicial notice of certain previously docketed declarations (AISLIC only); and (3) a request for administrative leave to file certain documents under seal (AISLIC only). The court hereby: (1) OVERRULES the parties' objections to evidence; (2) DENIES AISLIC's request to take judicial notice as the prior filings in this case are not an appropriate subject to be judicially noticed, however, the court considers those documents again here as they could properly have been e-filed in conjunction with the current briefing; and (3) GRANTS AISLIC's request to file certain documents under seal, with the exception of AISLIC's brief, which the court declines to file under seal.

United States District Court

For the Northern District of California

1   of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

2   56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

3                      2.      Duty to Defend

4          An insurance carrier's duty to defend its insured from a third-party lawsuit extends

5   broadly to require that the carrier defend all suits which even potentially seek damages that

6   are within the scope of the policy.  Montrose Chemical Corp. v. Superior Court, 6 Cal.4th 287,

7   299 (1993); see also, e.g., Lebas Fashion Imports v. ITT Hartford Ins. Grp., 50 Cal. App. 4th

8   548, 5567 (1996) (duty to defend may only be excused "when third-party complaint can by no

9   conceivable theory raise a single issue which would bring it within the policy coverage.").  In

10  evaluating whether coverage under the policy – and a corresponding duty to defend – exists,

11  the insurance carrier must base its decision on the facts presented to it at the time of tender.

12  Gunderson, 37 Cal. App. 4th at 1114; Montrose, 6 Cal.4th at 295.  The carrier must consider

13  the allegations raised in the third-party complaint and any extrinsic evidence presented by the

14  insured.  Anthem Electronics, Inc. v. Pacific Employers Ins. Co., 302 F.3d 1049, 1054-55 (9th

15  Cir. 2002) (citations omitted).

16         B.      Coverage Under the AISLIC Policy

17         With these principles in mind, the first issue to be decided in determining AISLIC's duty

18  to defend is whether the AISLIC policy, in its affirmative coverage provisions, covers the

19  claims asserted in the Kim/Kaen complaints.  See, e.g., Palmer v. Truck Ins. Exch., 21 Cal. 4th

20  1109, 1115-16 (1999) (coverage determined by comparing allegations of third party

21  complaint with coverage language of policy).  Sony asserts that it does, arguing that the

22  Kim/Kaen claims are covered under the "negligent publication" definition for "wrongful acts."

23  AISLIC, by contrast, disputes the meaning given to the term "negligent publication" by Sony,

24  and argues that the Kim/Kaen complaints do not allege claims for "negligent publication" as

25  the term should properly be understood, thereby prohibiting coverage.

26         The court's determination of coverage can therefore be distilled into two inquiries: (1)

27  the proper meaning to be given the term "negligent publication" under the policy; and (2)

28

                                    4

United States District Court

For the Northern District of California

1    whether the Kim/Kaen complaints allege claims for "negligent publication," as properly

2    defined.

3              1.       "Negligent Publication"

4         The AISLIC policy obligates AISLIC to provide coverage for claims alleging Sony's

5    "defective advice, incitement, or negligent publication, including bodily injury or property

6    damage or death arising out of the foregoing." See Rafsol Decl., Ex. C at 00123 (Policy,

7    section VII (Definitions))(emphasis added).  The policy does not, in and of itself, provide a

8    definition for "negligent publication."  Sony contends that the term has a plain meaning and

9    should be read to mean simply the "communication of information to the public, lacking or

10   exhibiting a lack of due care or concern."  AISLIC, by contrast, argues that the term cannot be

11   construed so broadly, and really refers to a category of torts that typically seek redress for

12   bodily injury or harm.

13        The interpretation of insurance policies follows the general rules of contract

14   interpretation.  See MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 647 (2003); Waller v.

15   Truck Insurance Exch., Inc., 11 Cal. 4th 1, 18 (1995).  Contract interpretation is based on the

16   premise that it must give effect to the mutual intention of the parties.  See MacKinnon, 31 Cal.

17   4th at 647.  This intent, if possible, should be inferred solely from the written provisions of the

18   contract, as interpreted in their "ordinary and popular sense."  Id. at 648.  An exception to this

19   "ordinary and popular" rule arises, however, where the parties have used a given term in a

20   "technical sense" or where a "special meaning" is given to a term "by usage."  Id.  In that case,

21   the term should be read with reference to that special meaning or technical sense, and

22   extrinsic evidence is allowed in to support such a reading.  Id.  If the term is capable of more

23   than one meaning, it is ambiguous, and the court must resolve the ambiguity.

24        Applying these rules, the term "negligent publication" should be read according to its

25   plain meaning – i.e., in light of its "clear and explicit" meaning, under its ordinary and popular

26   sense – unless the term is used by the parties in a technical sense or a special meaning is

27   given to it by usage.  There is no evidence here that the parties attached any technical or

28

5

United States District Court

For the Northern District of California

1  special meaning to the term "negligent publication" in the AISLIC policy; accordingly, its plain

2  meaning should apply.

3         To arrive at the term's plain meaning, Sony urges the court to reference the dictionary

4  definitions of the words "negligent" and "publication," and string them together to arrive at a

5  definition for "negligent publication" that means "communication of information to the public,

6  lacking or exhibiting a lack of due care or concern."  Sony is correct that, under the plain

7  meanings ascribed to it by the dictionary, the term "negligent publication" has such a meaning.

8  Moreover, such a reading is, at first blush, a plausible reading of the term as it is used in the

9  AISLIC policy.

10         This conclusion, however, does not resolve the issue.  For in interpreting the plain

11  meaning of a policy provision, the court must construe the language of the policy "in the

12  context of that instrument as a whole, and in the circumstances of the case...".  See, e.g., ACL

13  Technologies, Inc. v. Northbrook Property and Casualty Ins. Co., 17 Cal. App. 4th 1773, 1785

14  (1993); see also MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 649 (2003) ("Although

15  examination of various dictionary definitions of a word will no doubt be useful, such

16  examination does not necessarily yield the "ordinary and popular" sense of the word if it

17  disregards the policy's context.").  Here, the context of the policy as a whole and the

18  circumstances of the case indicate that the term "negligent publication" cannot be read as

19  broadly as Sony urges.

20         First, Sony itself admits that under the broad definition for "negligent publication" that it

21  advocates, the term necessarily covers claims for negligent misrepresentation and false

22  advertising.  Indeed, Sony must concede that point, for the dictionary definition upon which it

23  bases its interpretation of the term bears a striking resemblance to the ordinary legal

24  definition of negligent misrepresentation.  See, e.g., Black's Law Dictionary 1016 (7th ed.

25  1999)  (Defining "negligent misrepresentation" as "a careless or inadvertent false statement in

26  circumstances where care should have been taken").  But the AISLIC policy specifically

27  excludes claims for negligent misrepresentation, as well as claims for false advertising.  See

28

6

**United States District Court**
For the Northern District of California

1    Rafsol Decl., Ex. C at 00105-109 (Policy, section II (Exclusion P)).  Accordingly, to adopt

2    Sony's definition of "negligent publication" is to read into the policy coverage for that which the

3    policy specifically excludes.[2]  Such a result would be non-sensical.

4         Moreover, analysis of the case law, though it fails to provide a well-established

5    meaning for the term "negligent publication," nonetheless indicates that it is not a term that has

6    generally been accorded the broad definition advanced by Sony.  As Sony correctly points

7    out, the term has been used more narrowly by the Ninth Circuit to refer to tort claims such as

8    misappropriation and defamation, rather than the false advertising or negligent

9    misrepresentation claims such as those the parties assert are alleged in the Kim/Kaen

10   actions.  See, e.g., Newcombe v. Adolf Coors Co., 157 F.3d 686, 695 (9th Cir. 1998) (holding

11   that "a claim for negligent publication is essentially the same as either a claim for

12   misappropriation or for defamation").  Indeed, as both parties conceded at the hearing, there

13   is no case that has ever extended the term "negligent publication" to cover claims such as

14   negligent misrepresentation and false advertising.  In sum, existing case law does not support

15   the expansive definition of the term "negligent publication" that Sony offers.

16        Finally, the undisputed evidence also demonstrates that the parties did not intend for

17   the term "negligent publication" to be construed as broadly as Sony argues.  Sony's broad

18   dictionary definition of the term would, as stated above, cover the false advertising and

19   negligent misrepresentation allegations asserted in Kim/Kaen.  However, Sony's own

20   insurance brokers, as well as the risk-manager for Sony's affiliated entity, Sony Corporation of

21   America, testified that they did not believe the AISLIC policy was designed to cover the

22   Kim/Kaen allegations.  See Declaration of Thomas Sloan in Support of AISLIC's Motion for

23   Summary Judgment, Ex. B at 164:17-165:14; Ex. C at 22:2-23:7; 110:15-17; 113:10-114:2;

24   133:3-133:15; see also Declaration of Martin Myers in Support of Sony's Opposition to

25

26   _____

     [2]       Sony later argues that Exclusion P contains an exception that affirmatively promises
27   a defense for false advertising and misrepresentation claims, despite the exclusion of such claims
     from coverage.  As discussed more fully below, Sony's argument is unpersuasive.  The argument
28   does not change the analysis here, at any rate, since coverage must be determined prior to
     referencing any applicable exclusions.

United States District Court

For the Northern District of California

1  Motion for Summary Judgment, Ex. J at 23:2-23; 126:11-14.  Although Sony asserts that this

2  evidence is irrelevant, since Sony never relied on it in making coverage decisions, the court

3  disagrees.  The evidence is relevant to a consideration of the meaning of the term "negligent

4  publication" in the context of the policy and under the factual circumstances of the case.

5  As such, the evidence supports what the cases conclude:  that the term "negligent

6  publication" cannot be broadly defined to mean a "communication" lacking "due care or

7  concern," such that the term subsumes within it claims for false advertising and negligent

8  misrepresentation.[3]  Rather, the term should be more narrowly construed to refer to that

9  category of tort claims typified by defamation and misappropriation claims.

10  2.  Allegations in Kim/Kaen Complaints

11  Having construed the term "negligent publication," the next issue for the court is whether

12  the Kim/Kaen complaints allege claims for "negligent publication."  This determination must be

13  made by comparing the allegations of the Kim/Kaen complaints with the coverage language

14  of the policy.  See, e.g., Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109, 1115-16 (1999)

15  (determination of coverage to be made via comparison of third party complaint with policy

16  provisions).

17  Here, none of the Kim/Kaen allegations that Sony relies on can be read to allege

18  claims for "negligent publication."   The allegations on their face disclose claims for false

19  advertising, misrepresentation, breach of warranty, and other fraudulent claims, not for

20  defamation or misappropriation, as negligent publication claims are commonly read to cover.

21  See, e.g., Liu Decl., Ex. B at ¶¶ 54-56, 59, 83, 88, 94; Id. at Ex. A at ¶¶ 2-8, 15(a)-(g), 36-44,

22  56, 61(a)-(c), 62, 71, 78-81.  Moreover, read as a whole, it is apparent that the Kim/Kaen

23  complaints are really alleging product defect claims; fundamentally, plaintiffs' claims stem from

24  allegations that the PS2s designed by Sony were inherently defective, and that any advertising

25

26  _____
[3]  In so holding, the court also rejects as contrary to the express language of the policy
27  AISLIC's contention that "negligent publication" should be understood to refer to claims alleging
   physical or bodily injury only.  Although AISLIC's counsel disavowed reliance on any such
28  argument at the hearing, AISLIC contends otherwise in its briefing.

United States District Court

For the Northern District of California

1  or press publications failing to acknowledge the defect are actionable.[4]  Since claims alleging

2  product defect are distinct from claims alleging "negligent publication," this also counsels

3  against a finding that the Kim/Kaen complaints allege "negligent publication" claims.

4       In short, it simply cannot be said that the Kim/Kaen allegations, which give rise to false

5  advertising, negligent misrepresentation, and other fraud-based claims, also give rise to the

6  possibility of coverage under the "negligent publication" provision of AISLIC's policy, which

7  relates to claims associated with defamation and misappropriation.  As such, coverage for

8  the Kim/Kaen claims cannot be invoked under the "negligent publication" provision, and no

9  duty to defend exists under the affirmative coverage provisions of the policy.

10      D.     Exclusion "P"

11      Sony next argues that, even if the court finds that the "negligent publication" provision

12 does not cover the false advertising and misrepresentation claims alleged in the Kim/Kaen

13 actions, coverage should still be found for these claims under Exclusion P to the policy.

14 Exclusion P excludes both false advertising and misrepresentation claims from coverage, but

15 also contains an "exception" to the exclusion, which states that AISLIC will nonetheless

16 "defend suits alleging [false advertising or misrepresentation in advertising] until there is a

17 judgment, final adjudication, adverse admission or finding of fact against [Sony] as to such

18 conduct...".  See Rafsol Decl., Ex. C at 00108 (Policy, section II (Exclusion P)).  AISLIC argues

19 that neither Exclusion P, nor the "exception" to Exclusion P, can create coverage since there is

20 no coverage under the insuring "wrongful act" provisions of the policy.

21      AISLIC is correct.  An exclusion to a policy cannot create coverage that does not

22 otherwise exist.  See, e..g, Old Republic Ins. Co. v. Superior Court, 66 Cal. App. 4th 128, 144

23 (1998) ("An exclusion cannot act as an additional grant or extension of coverage"), overruled

24 on other grounds in Vandenburg v. Superior Court, 21 Cal. 4th 815 (1999).  Nor can an

25 exception to an exclusion.  See, e.g., id. at 145 (""there is no cure for a lack of coverage under

26 _____

27      [4]     Indeed, this court's prior order granting summary judgment in favor of co-defendant
   American Home acknowledged as much.  See Order Granting Defendant's Motion for Summary
28 Judgment and Denying Plaintiff's Motion for Summary Judgment (filed 8/30/05), at 7.

9

**United States District Court**

For the Northern District of California

1   the insuring clause.  Even if the effect of an exception is to render a particular exclusion

2   inoperative, the insured must still prove the loss is covered."); see also Scottsdale Ins. Co. v.

3   OU Interests, Inc., 2005 WL 2893865, *8 (N.D. Cal. 2005) (exceptions to exclusions remain

4   "subject to and limited by all other related exclusions contained in the policy").  And since the

5   court has found that no coverage exists here under the insuring provisions of the AISLIC policy

6   (i.e., the "wrongful act" provision for "negligent publications"), neither Exclusion P nor the

7   "exception" to exclusion P can be used to support a duty to defend the false advertising or

8   misrepresentation claims alleged in the Kim/Kaen actions.

9           Sony's attempts to argue otherwise are unpersuasive.  Sony first adopts the well-

10  established premise that exclusions serve to limit the coverage granted by an insuring clause,

11  and then argues that if this is so, the false advertising claims covered by Exclusion P must

12  necessarily be interpreted as covered by the insuring provisions – else, the exclusion would

13  be unnecessary.  Not so.  If this were true, every exclusion in an insurance contract would

14  always be read to imply coverage for the very same claims which the exclusions purport to

15  disclaim.  Such a result turns the interpretation of insurance contracts on its head.  This cannot

16  be the way to read Exclusion P, nor any other exclusion for that matter.

17          Sony next turns its attention to the "exception" contained within Exclusion P, and

18  employing similar reasoning to that above, argues that even if false advertising claims are

19  excluded from coverage, the exception to Exclusion P promises a defense for false

20  advertising claims nonetheless, and creates coverage for false advertising and

21  misrepresentation claims.  For support, Sony relies on Nat'l Union Fire Ins. Co. V. Lynette C,

22  and Marie Y. v. General Star Indemnity Co., 228 Cal. App. 3d 1073 (1991), and 110 Cal. App.

23  4th 928 (2003), respectively.  In both those cases, argues Sony, the court held that an

24  exception to an exclusion can create an independent, legally enforceable obligation to defend.

25  Specifically, Sony contends that in Nat'l Union, the court affirmatively held that an exception to

26  an exclusion can broaden coverage, and in Marie Y., an exception to an exclusion remarkably

27  similar to the one at issue here was held to "create" coverage which did not otherwise exist

28

United States District Court

For the Northern District of California

1    under the policy in question.

2           Sony's reliance on these cases is misplaced.  While Sony correctly recites the holding

3    of the Nat'l Union court, Sony ignores the court's reasoning, which specifically acknowledged

4    (1) "that coverage cannot be found in an exclusion clause"; and (2) that it was reading the

5    exception to the exclusion clause at issue "in light of the basic coverage clause."  See 228

6    Cal. App. 3d at 1079-80.   Here, by contrast, the basic coverage provisions of the AISLIC

7    policy do not support coverage, and neither can the exception to Exclusion P.  As for Marie Y.,

8    contrary to what Sony argues, that case did not hold that coverage could be "created" under

9    an exception to an exclusion clause.  Rather, Marie Y. held that an exception to an exclusion

10   clause supported a duty to defend where coverage *otherwise existed* under the insuring

11   provisions of the policy.  See 110 Cal. App. 4th at 960 (concluding that allegations of

12   amended complaint stated "dental incident" falling within policy's coverage provisions).

13   Again, a different result is compelled here, since the Kim/Kaen allegations do not allege a

14   "wrongful act" such that the exception to Exclusion P would support coverage.

15          Moreover, in arguing for coverage under the "exception" to Exclusion P, Sony

16   overlooks two fundamental principles:  first, that exceptions to exclusions "remain 'subject to

17   and limited by all other related exclusions contained in the policy.'"  Nat'l Union, 228 Cal. App.

18   3d at 1081.  Second, that the underlying inquiry guiding the court is whether the insured "could

19   objectively and reasonably expect a defense under" any exception to an exclusion.  See, e.g.,

20   Marie Y., 110 Cal. App. 4th at 960.  Reading Exclusion P here in conjunction with Exclusion C

21   and Exclusion J, it simply cannot be said that Sony "could objectively and reasonably expect a

22   defense under" Exclusion P's "exception" for claims alleging false advertising or

23   misrepresentation.  Exclusion C excludes coverage for all claims alleging "unfair or deceptive

24   business practices", including "violations of any local, state or federal consumer protection

25   laws."  See Rafsol Decl., Ex. C at 00105-109 (Policy, section II (Exclusions)).  Exclusion J, for

26   its part, excludes coverage for all claims "alleging or arising out of a breach of any express

27   warranties, representations or guarantees".  Id.  Both exclusions can be read to cover the false

28

advertising and misrepresentation allegations of the <u>Kim/Kaen</u> complaints:  the false

advertising claims asserted in <u>Kim/Kaen</u> are made pursuant to California's unfair business

practices statute, thereby implicating Exclusion C.  <u>See</u> Liu Decl., Ex. A at ¶¶ 61-62, 78-80;

Ex. B at ¶¶ 83, 88-90, 93-94.  As for the misrepresentations asserted in the <u>Kim/Kaen</u>

actions, they are as to "the quality, character and performance" of Sony's PS2s and were

contained in "various advertising, packaging and correspondence," thereby implicating at a

minimum the "representation" prong of Exclusion J.   <u>See id.</u>; <u>see also</u> Liu Decl., Ex. B at ¶¶

21-27, 44, 54, 59, 83, 94.

In sum, as both the case law and review of the policy language makes clear, neither

Exclusion P nor the so-called "exception" to Exclusion P applies unless coverage under the

AISLIC policy may be invoked in the first instance.  And as described above, no such

coverage under the "negligent publication" provision may be invoked here.  Accordingly, it

cannot be said that Sony could have "objectively and reasonably" expected a defense under

Exclusion P or its "exception", and the court finds that no duty to defend existed under either.

Summary judgment is therefore GRANTED to AISLIC on Sony's claims for breach of

the duty to defend and for declaratory relief regarding AISLIC's duty to defend.  Sony's motion

for summary judgment as to both claims is DENIED.

E.     Remaining Claims

Because summary judgment has been granted on the duty to defend claims, judgment

must also be granted on Sony's claims for failure to indemnify.  Because no breach of contract

has been shown, the bad faith claim fails as well.  <u>Love v. Fire Insurance Exch.</u>, 221 Cal. App.

3d 1136, 1153 (1990).  Accordingly, AISLIC's motion for summary judgment as to Sony's

claims for breach of the duty to indemnify, declaratory relief regarding AISLIC's duty to

indemnify, and for breach of the implied covenant of good faith and fair dealing, is GRANTED.

F.     Conclusion

AISLIC's motion for summary judgment on all claims is GRANTED, and Sony's motion

for summary judgement on the duty to defend claims, as pled in the first and fourth causes of

United States District Court

For the Northern District of California

1  action, is DENIED.

2       Summary judgment having been previously granted to American Home Assurance Co.,

3  it appears to the court that there are no remaining defendants or claims in this case.  If any

4  defendants disagrees, it shall notify the court in writing requesting a case management

5  conference no later than December 9, 2005.

6

7  **IT IS SO ORDERED.**

8  Dated:  December 1, 2005

9                                          _____
                                           PHYLLIS J. HAMILTON
10                                         United States District Judge

**United States District Court**

For the Northern District of California